UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHAVON TYVELL BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:15-CV-082 RM |
| v. | ) |
| | ) |
| COMMISSIONER, INDIANA | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| *et al.* | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Shavon Tyvell Boyd, a *pro se* prisoner, was granted leave to proceed against Bruce Lemmon[1] for injunctive relief seeking kosher meals containing meat under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). He was also granted leave to proceed against David Liebel, Sgt. Johnson, Sharon Hawk, Chaplain Ungrodt and Chaplain Green under RLUIPA and the First Amendment for denying him the right to practice his religion at the Westville Correctional Facility. The defendants have filed a motion for summary judgment, in which they assert that a prior settlement agreement bars Mr. Boyd's claim for a kosher diet and the remaining claims should be dismissed because he didn't exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a).

Summary judgment must be granted when "there is no genuine dispute as to any

---

[1] In his official capacity as Commissioner of the Indiana Department of Corrections.

1

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).

Mr. Boyd is a Jewish inmate within the Indiana Department of Correction and is housed at the Westville Correctional Facility. In September 2013, Mr. Boyd brought suit in federal court pursuant to RLUIPA, alleging the Department of Correction was refusing to provide him with a kosher diet that met his Jewish religious needs. (Boyd v. Commissioner, No. 3:13-CV-185 (S.D. Ind.). On December 3, 2014, Mr. Boyd, represented by counsel, entered into a release and settlement agreement in that case. The terms of the settlement in 3:13-CV-185 included that in exchange for the Department of Correction

> . . . granting of a kosher diet subject to the IDOC kosher diet policies, I, Shavon Boyd, do hereby release, acquit and forever discharge [the State of Indiana and the Department of Corrections] from any and all actions. . . resulting or to result from the denial of a kosher diet by Defendants . . . which are the subject of [this] lawsuit or . . . any claim that could have been raised concerning the denial of a kosher diet and any claim that may exist against Defendants concerning the denial of a kosher diet . . .." (Id. at 1.)

The undisputed evidence shows that before Mr. Boyd entered into this settlement,

the Department of Correction had implemented kosher kitchens that only served kosher vegetarian meals. The Department of Correction kosher kitchens don't serve kosher meat products. Under the settlement agreement and Department of Correction policy, Mr. Boyd started receiving a vegetarian kosher diet from the Department of Correction. After realizing that the kosher meals contained no meat, Mr. Boyd asked the Department of Correction to provide him with kosher meals containing meat. The Department of Correction refused. On February 4, 2015, Mr. Boyd filed this suit, alleging that the Department of Correction is violating his RLUIPA rights by giving him vegetarian kosher meals.

Mr. Boyd does not allege to have any newly held religious practices or beliefs since he settled his earlier case. Instead, he claims that when he settled with the Department of Correction, he didn't know that he would be receiving vegetarian kosher meals. He thought he would be getting kosher meals containing meat. Nevertheless, the defendants argue that the release Mr. Boyd signed in his earlier case bars his current claim.

A release is a contract, so even though the settlement occurred in litigation brought in federal court, Indiana law governs the effect of the release. Capocy v. Kirtadze, 183 F.3d 629, 632 (7th Cir. 1999). A release agreement is a species of contract that surrenders a claimant's right to prosecute a claim. Prall v. Indiana Nat'l Bank, 627 N.E.2d 1374, 1377 (Ind. Ct. App. 1994.)  The Indiana Supreme Court "has stated that upholding releases serves an important public policy because it facilitates the orderly settlement of disputes." Id. (citation omitted.) A release is interpreted like any other contract. Id. Indiana courts

3

construe a release to carry out the intent of the parties. Keskin v. Munster Medical Research Foundation, 580 N.E.2c 354, 358 (Ind. Ct. App. 1991). That intent is disclosed by the language the parties used to express their rights and duties considered in light of all the facts and circumstances. Citizens National Bank of Tipton v. Indianapolis Auto Auction, 592 N.E.2d 1256, 1258 (Ind. Ct. App. 1992). Unless they are ambiguous, release agreements are interpreted as a matter of law. Prall v. Indiana Nat'l, 627 N.E.2d at 1377.

In exchange for receiving a kosher diet subject to Department of Correction kosher diet policies, Mr. Boyd released the Department of Correction from "any and all actions. . . resulting or to result from the denial of a kosher diet by Defendants . . . which are the subject of [this] lawsuit or . . . any claim that could have been raised concerning the denial of a kosher diet and any claim that may exist against Defendants concerning the denial of a kosher diet . . .." The terms of the release are clear: Mr. Boyd released the Department of Correction from any claim that was or could have been raised about the denial of a kosher diet. When this release was executed, the Department of Correction's kosher kitchens only served kosher vegetarian meals; it didn't serve kosher meals containing meat. (DE 58-1 ¶ 4-6.) If Mr. Boyd believed that the Department of Correction kosher diet was inadequate to meet his religious beliefs because it didn't contain meat, he could have raised it before he released the Department from liability. Under the terms of the release, Mr. Boyd has waived his right to pursue today's claim seeking meat in his kosher meal.

Mr. Boyd says he believed he would be receiving kosher meals containing meat. While it's unclear what exactly Mr. Boyd knew about the Department of Correction policies

on kosher meals, it doesn't matter. The Supreme Court of Indiana has long held that a unilateral mistake of fact — a mistake made by only one party — cannot justify the rescission of a release. <u>Indiana Bell Telephone Company, Inc. v. Mygrant</u>, 471 N.E.2d 660 (Ind. 1984). Because a unilateral mistake can't be used to rescind a release, it only follows that such a mistake can't be used to circumvent a release. Mr. Boyd can't escape the release's plain language simply because he may have been mistaken about the contents of kosher meals served by the IDOC.

Mr. Boyd argues that he didn't knowingly or voluntarily waive his right to have meat in his kosher meal. He claims that, based on his counsel's advice, he understood that he only released the Department of Correction from the denial of any kosher diet, not all claims regarding kosher diets. When "the plaintiff is represented by chosen counsel throughout negotiations and settlement . . . [the release] is presumptively informed and willing, absent circumstances such as fraud or duress." <u>Baptist v. City of Kankakee</u>, 481 F.3d 485, 490 (7th Cir. 2007) (quotation omitted). "[C]ounsel's advice is irrelevant to the question of whether a settlement was knowing and voluntary." <u>Id.</u> Indeed, our court of appeals has recognized, in the context of Title VII cases, that "when the plaintiff executes a settlement agreement with the advice of independent counsel, it is deemed voluntary and knowing — and hence, binding." <u>Riley v. Am. Family Mut. Ins. Co.</u>, 881 F.2d 368, 371 (7th Cir. 1989) (citation omitted).

Mr. Boyd was represented by counsel when he negotiated the release agreement, and there is no evidence of fraud of duress, so this court finds that he entered into the

5

release knowingly and voluntarily. As a result, he has waived his right to pursue this claim.

Mr. Boyd was granted leave to proceed on various claims against defendants David Liebel, Sgt. Johnson, Sharon Hawk, Chaplain Ungrodt and Chaplain Green for denying him the right to practice his religious beliefs and practices under the First Amendment and RLUIPA. The defendants argue that they are entitled to summary judgment because Mr. Boyd didn't exhaust his administrative remedies prior to filing this lawsuit.

Under the Prison Litigation Reform Act, prisoners can't bring an action in federal court about prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). Our court of appeals has taken a "strict compliance approach to exhaustion." Id. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Id.

It is undisputed that Westville Correctional Center has a grievance procedure under which inmates can grieve a broad range of issues, including their living conditions and the actions of prison staff. A record is kept of all inmate grievances, and those records reflect that Mr. Boyd filed several grievances while he was housed at Westville Correctional Center. Though the defendants argue that all of Mr. Boyd's claims are unexhausted, the records show Grievance #85924 — a complaint about Chaplain Ungrodt and Mr. Boyd's

6

ability to use the chapel and celebrate Chanukah — was fully exhausted. Mr. Boyd's allegations against Chaplain Ungrodt in Grievance #85924 are virtually identical to the some of allegations against him in this case. Mr. Boyd properly exhausted his administrative remedies as to his claims against Chaplain Ungrodt for not allowing him to pray in the chapel and celebrate Chanukah.

The undisputed evidence reveals that Mr. Boyd didn't attempt to exhaust his administrative remedies with regard to any of his other claims before filing this lawsuit on February 4, 2015. Mr. Boyd filed his formal grievances after he filed this suit. Mr. Boyd attempts to avoid dismissal by including his own declaration stating that he was denied various appeal forms for these grievances. Mr. Boyd's declaration might create a disputed issue of fact as to whether he ever exhausted his administrative remedies, but it doesn't create an issue of fact as to whether he filed a formal grievance before he filed the complaint in this case. A prisoner must completely exhaust his available administrative remedies before he files the complaint. Burrell v. Powers, 431 F.3d 282 (7th Cir. 2005); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004) ("exhaustion must precede litigation). Since the evidence establishes that he filed his formal grievances after he filed this case, the availability of appeal forms is an irrelevant point in this context.

Because Mr. Boyd's formal grievances were filed after this case was filed, they didn't satisfy the exhaustion requirement, requiring the dismissal of these claims. Pozo v. McCaughtry, 286 F.3d at 1025. As a result, only Mr. Boyd's First Amendment and RLUIPA claims against Chaplin Ungrodt for not allowing him to pray in the chapel and celebrate

7

Chanukah remain pending.

For these reasons, the court:

(1) GRANTS IN PART the defendants' motion for summary judgment (DE 47);

(2) DISMISSES WITH PREJUDICE Mr. Boyd's RLUIPA claim seeking kosher meals containing meat;

(3) DISMISSES WITHOUT PREJUDICE Mr. Boyd's First Amendment and RULIPA claims against David Liebel, Sgt. Johnson, Sharon Hawk and Chaplain Green pursuant to 28 U.S.C. § 1997(e);

(4) DISMISSES WITHOUT PREJUDICE Mr. Boyd's First Amendment and RLUIPA claims against Chaplain Ungrodt for denying him the right to be permitted to wash three times a day before consuming food, wash after using the toilet, and possess religious material, pursuant to 28 U.S.C. § 1997(e);

(5) DISMISSES Bruce Lemmon, David Liebel, Sgt. Johnson, Chaplain Green and Sharon Hawk from this case.

SO ORDERED.

ENTERED: March 21 , 2016.     /s/ Robert L. Miller, Jr.
                              Judge
                              United States District Court